Thomas G. Smith of Purcell, for petitioner.

Tully McCoy, Dist. Atty., and Rick Sitzman and Irby Taylor, Asst. Dist. Attys., for respondent.

**BRETT, Presiding Judge.**

On October 20, 1988, the above petitioner filed his petition in this Court seeking issuance of the writ of prohibition against the Honorable Respondent to prohibit the enforcement of a certain order to remove a bullet from petitioner. The order was issued in McClain County District Court Case No. CRF-88-56. The application and petition were set for oral argument to be had in this Court at 10:00 a.m. on October 26. This Court assumed jurisdiction. The Court had before it the record of the preliminary examination, and a transcript of the adversary hearing held by the district court on August 24, 1988, after which the district court order was entered on September 8, 1988, granting the State's Motion for surgical removal of a bullet from petitioner.

**Harold ANDREWS, Petitioner,**

v.

**Judge Kenneth LOVE, Judge of the District Court of McClain County, Oklahoma, Respondent.**

No. P-88-879.

Court of Criminal Appeals of Oklahoma.

Oct. 27, 1988.

NOW THEREFORE, after considering the application and petition filed herein along with the briefs submitted by both sides, the transcript of the preliminary examination and the transcript of the adversary hearing, and after weighing the factors outlined in *United States v. Crowder*, 543 F.2d 312 (D.C.Cir.1977), and *Winston v. Lee*, 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985), and being sufficiently advised in the premises, this Court finds that the writ of prohibition should not issue.

IT IS THEREFORE THE ORDER OF THIS Court, that the writ shall not be granted, and the State may, within the guidelines set forth in the McClain County District Court Order of September 8, 1988, pursue the surgical removal of the bullet from petitioner. In accordance with the provisions of said order, additional x-rays shall be taken, and in the event the surgeon finds that the bullet has moved significantly from its previous location, or that such surgery will impose a significant risk to the health of the petitioner, then the said surgery shall be delayed until the matter can be re-presented to the McClain County District Court at a proper hearing.

IT IS THE FURTHER ORDER OF THIS COURT, that further proceedings in McClain County Case No. CRF–88–56, shall be STAYED in order to permit petitioner to present this matter for consideration in the Federal Courts.

BUSSEY, J., specially concurs.

PARKS, J., dissents.

BUSSEY, Judge, specially concurring:

It is well settled that the Fourth Amendment protects an individual's reasonable expectation of privacy. *See Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed. 2d 576 (1967). Assuredly, I do not suggest that a compelled surgical intrusion into an individual's body for evidence does not implicate expectations of privacy. However, the Fourth Amendment neither forbids nor permits all such intrusions; rather, the Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner. *Schmerber v. California*, 384 U.S. 757, 768, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). When this standard is applied to the facts of this case, I believe the removal of the bullet is reasonable and proper, and the district court's order should be sustained.

The State's case is admittedly circumstantial. On March 3, 1988, Hatten Lee Ledford was fatally wounded in his home. There were no eyewitnesses. Mrs. J.R. Dial has testified that she talked to Ledford as he lay on the floor dying, and he claimed that John D. Miser, a neighbor, had shot him. Ledford also stated to Mrs. Dial that he had returned fire against his attacker. A .22 rifle with spent shell casings was found lying next to Ledford's body.

Within one hour of the shooting, petitioner was found approximately a quarter of a mile from Ledford's house. Petitioner had been shot in the chest, and it was determined that a bullet was lodged in his arm. Subsequent investigation uncovered a .20 gauge shotgun in a pond approximately three-tenths of a mile from Ledford's house.

Dr. Edward Lee testified that the removal of the bullet from petitioner's arm can be accomplished with routine, minor surgical procedures, under local anesthetic, without any significant danger to the health or safety of the petitioner. The bullet is located in the fleshy part of the arm, approximately one and a half centimeters deep, near a major artery, but Dr. Lee testified that if done properly, the bullet can be removed without injury to the vessel. Dr. Lee stated that there is a 99.9 percent chance that the surgery would be an uncomplicated, minor procedure that poses no risk of long-term injury to the petitioner. Finally, the sought-after bullet does not appear to be fragmented or corroded, and OSBI agent Allen Selman testified that Ledford's gun leaves identifying markings on the bullets that it fires.

In *United States v. Crowder*, 543 F.2d 312 (D.C.Cir.1976), *cert. denied*, 429 U.S. 1062, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977),

the court held that an operation performed under a local anesthetic, removing a bullet-like object located immediately under the skin in Crowder's forearm, was a reasonable search under the Fourth Amendment. In support of its decision, the court provided the following factors:

1) the evidence sought was relevant, could have been obtained in no other way, and there was probable cause to believe that the operation would produce it;

2) the operation was minor, was performed by a skilled surgeon, and every possible precaution was taken to guard against any surgical complications, so that the risk of permanent injury was minimal;

3) before the operation was performed, the district court held an adversary hearing at which the defendant appeared with counsel; and

4) thereafter and before the operation was performed the defendant was afforded an opportunity for appellate review. *Id.* at 316.

Applying these factors to the present case, it is clear that the evidence sought is relevant, can be obtained in no other way, and there is probable cause to believe that the operation would produce it. The operation is minor and would be performed by a skilled surgeon under a local anesthetic. The risk of permanent injury is minimal, and further x-rays would be taken to ensure petitioner's safety. Finally, petitioner has been afforded both an adversary hearing and appellate review.

The Supreme Court addressed surgical intrusion in *Winston v. Lee,* 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985). *Lee* involved a surgical procedure under a general anesthetic for the removal of a bullet lodged in the muscular tissue of the chest, approximately three centimeters deep. In medical terms, it seems fairly obvious that the surgery contemplated in *Lee* entailed a greater risk of permanent injury than the surgery involved in *Crowder* or the present case.

In *Lee,* the Supreme Court restated the procedural requirements of *Schmerber, su-*

*pra,* that being, probable cause and a search warrant. The court then established a balancing test weighing the extent to which the procedure may threaten the individual's safety or health, the extent of intrusion upon the individual's dignity interests in personal privacy and bodily integrity, and the community's interest in fairly and accurately determining guilt or innocence. *Id.* 470 U.S. at 758–60, 105 S.Ct. at 1615–16.

In affirming the lower court's denial of the surgery, the court pointed to the conflicting testimony regarding the medical risks of the surgery, and of particular concern was the use of the general anesthetic. The court also expressed doubt about the probative value of the bullet due to corrosion while inside Lee's body, and the availability of alternative evidence against Lee. *Id.* 470 U.S. at 766 n. 10, 105 S.Ct. at 1619 n. 10.

Applying these factors to the present case, I find the following: (1) probable cause is established by the petitioner's close proximity to the scene of the homicide; (2) the procedure is not life-threatening; (3) the surgery would be performed under local anesthetic; (4) the community has a strong interest in determining petitioner's guilt or innocence to the charge of murder; (5) the bullet is still intact inside petitioner's arm; and (6) there is no other alternative evidence.

The Supreme Court declared in *Lee* that the reasonableness of surgical intrusions beneath the skin depends on a case-by-case approach. *Id.* 470 U.S. at 760, 105 S.Ct. at 1616. Obviously, reasonableness is a matter of degree, and I do not suggest that a court may order any challenged operation in any given case. However, this is a case of murder in the first degree. If we were to disallow bodily intrusion based on the presence of any risk, no matter how slight, then no such operation could ever be authorized by a court. I do not believe this is or should be the law.

Based on the totality of the circumstances in this case, and applying the balancing standards above, I find that the State has demonstrated a compelling need for the

bullet, with minimal risk to the petitioner, and the district court's order should be affirmed.

PARKS, Judge, dissenting:

I vigorously disagree with the majority's denial of petitioner's application for a writ of prohibition to prevent enforcement of the trial court's order compelling surgical removal of a bullet from petitioner.

The United States Supreme Court, in holding that a State may compel a defendant suspected of drunk driving to submit to a blood test, without violation of the Fourth Amendment's prohibition against unreasonable searches and seizures, warned:

[W]e reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States['] minor intrusions into an individual's body under stringently limited circumstances in no way indicates that it permits more substantial intrusions, or intrusions under other conditions.

*Schmerber v. California*, 384 U.S. 757, 772, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908 (1966). Subsequently, relying heavily upon *Schmerber*, the Court held that compelling a defendant suspected of attempting to commit an armed robbery to undergo surgical removal of a bullet located under his collarbone was "unreasonable" under the Fourth Amendment, and thus prohibited. *Winston v. Lee*, 470 U.S. 753, 755, 105 S.Ct. 1611, 1614, 84 L.Ed.2d 662 (1985). "A compelled surgical intrusion into an individual's body for evidence ... implicates expectations of privacy and security of such magnitude that the intrusion may be 'unreasonable' even if likely to produce evidence of a crime." *Id.* at 759, 105 S.Ct. at 1616. The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State, values which are basic to a free society. *Id.* at 760, 105 S.Ct. at 1616 (citations omitted). Admittedly, "[t]he reasonableness of surgical intrusions beneath the skin depends on a case-by-case approach, in which the individual's interest in privacy and security are weighed against society's interests in conducting the procedure." *Id.* at 760, 105 S.Ct. at 1616.

In *Winston*, the Court balanced the following factors: (1) the existence of probable cause; (2) the extent of threat to the safety or health of the individual; (3) the extent of intrusion upon the individual's dignitary interests in personal privacy and bodily integrity; and (4) the community's interest in fairly and accurately determining guilt or innocence. *Id.* at 760–62, 105 S.Ct. 1616–18. When the State seeks to justify an intrusion into an individual's body, it must "demonstrate a compelling need." *Id.* at 766, 105 S.Ct. at 1620. Because such intrusion is "upon an area in which our society recognizes a significantly heightened privacy interest, a more substantial justification is required to make the search 'reasonable.'" *Id.* at 767, 105 S.Ct. at 1620.

Assuming *arguendo* the State had probable cause to conduct the search, I believe the State has failed to substantially justify the search on the remaining three factors. The State presented the medical testimony of Dr. Edward Lee, M.D., and the testimony of OSBI Agent Allen Selman to meet its burden of justifying the requested compelled surgery. First, with regard to the threat to petitioner's health, Dr. Lee testified that because the bullet in petitioner's upper arm was imbedded one to one and a half centimeters in the subcutaneous tissue, within half a centimeter of the brachial artery, he would want a vascular surgeon, a specialist, to conduct the surgery. At the evidentiary hearing, Dr. Lee was unable to locate the bullet by exterior physical examination. Dr. Lee also conceded that surgical removal of the bullet might cause nerve damage to the hand. Dr. Lee opined a specialist could remove the bullet under local anesthetic, that nerve damage was not a "major consideration," and that such surgery was "minor." "The question whether the surgery is to be characterized in medical terms as 'major' or 'minor' is not controlling." *Winston*, 470 U.S. at 764 n. 8, 105 S.Ct. at 1618 n. 8. However, it is questionable whether Dr. Lee was in a

position to properly assess the risks of the operation since he would not do the surgery himself, but recommended a specialist. When confronted with this question, Dr. Lee admitted "I cannot testify for someone else's opinion." (Evid.Hg.Tr. 26)

Clearly, considering the depth of the wound, the extent of cutting and probing required, and the close proximity to the brachial artery, the requested surgery would constitute a substantial intrusion upon petitioner's privacy interests and bodily integrity. Turning to whether the State has demonstrated a compelling need for the evidence, I would point out that during oral argument before this Court Assistant District Attorney Richard Sitzman, speaking on behalf of District Attorney Tully McCoy, candidly stated the case would not be dismissed if they were not allowed to obtain the bullet, thus indicating their belief that their case against petitioner was strong enough to survive a motion for a directed verdict at trial. Mr. Sitzman further stated the State's need for the bullet was couched in terms of "strengthening" his case against petitioner, and not making or breaking it. Certainly, the foregoing makes respondents' "assertions of a compelling need for the bullet ... hardly persuasive." *Winston*, 470 U.S. at 765, 105 S.Ct. at 1619. Further, the probative value of the bullet is questionable. When asked by the trial judge, "[d]o .22 caliber projectiles ordinarily lend very well to ballistic examinations?," OSBI Agent Allen Selman testified, "I'm not aware. I'm not a firearms examiner myself." (Evid.Hg.Tr. 52) The State's evidence as to the possibilities of conducting a ballistics examination was based purely on the hearsay testimony of Agent Selman, who was allowed to testify that an OSBI Firearms Examiner had test fired the victim's .22 rifle and determined that bullets fired from it could be identifiable. Moreover, Agent Selman testified he was aware of a State witness' testimony at preliminary hearing that the .22 caliber cartridges found at the scene of the crime probably came from three separate rifles. (Evid.Hg.Tr. 51) Yet, only one rifle was tested for purposes of ballistics comparison.

In conclusion, in weighing the various factors enunciated in *Winston*, on this record, the State has failed to demonstrate a compelling need for the bullet, which may or may not be "useful" in its prosecution of petitioner. I believe that in these circumstances the compelled surgery would constitute an unreasonable search and seizure under the Fourth Amendment. *Winston*, 470 U.S. at 766–67, 105 S.Ct. 1620. Accordingly, I dissent.